## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**CASE NO.** 6:22-cv-1958

**JAMESE NATHAN**,
individually and
on behalf of all others similarly situated,                    **CLASS ACTION**

      Plaintiff,                                                         **JURY TRIAL DEMANDED**

v.

**SUPERJEWELER.COM INC.**,

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Jamese Nathan brings this class action against Defendant SUPERJEWELER.COM INC., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1.     This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2.     To promote its goods and services, Defendant engages in unsolicited text messaging, including to individuals who have registered their telephone numbers on the National Do-Not-Call Registry, and to those who have not

provided Defendant with their prior express written consent as required by the FTSA.

3.      Defendant also engages in telemarketing without the requisite policies and procedures and training required under the TCPA and its implementing regulations.

4.      Defendant's telephonic sales calls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and invasion of their privacy.

5.      Through this action, Plaintiff seeks an injunction and statutory damages on behalf of Plaintiff and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## **PARTIES**

6.      Plaintiff is, and at all times relevant hereto was, a citizen and resident of Orange County, Florida.

7.      Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that Plaintiff was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

8.      Defendant is, and at all times relevant hereto was, a foreign corporation and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f).

## **JURISDICTION AND VENUE**

9. This Court has federal question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331.

10. This Court has supplemental jurisdiction over Plaintiff's FTSA claims pursuant to 28 U.S.C. § 1367.

11. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant initiated and directed telemarketing and/or advertising text messages into Florida. Specifically, Defendant initiated and directed the transmission of unsolicited advertisement or telemarketing text messages to Plaintiff's cellular telephone number to sell goods, services or products in Florida. Plaintiff's telephone number has an area code that specifically coincides with locations in Florida, and Plaintiff received such messages while residing in and physically present in Florida.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District

## **FACTS**

13. On multiple occasions, including September 2, 2022, Defendant sent telephonic sales call to Plaintiff's cellular telephone number, including the following:





14.     As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales call was to solicit the sale of consumer goods and/or services.

15.     As demonstrated by the above screenshots, when it sent its text message solicitations to Plaintiff, Defendant failed to identify (1) the name of the individual caller; (2) the name of the legal entity on whose behalf the call was being made; and (3) a telephone number or address at which Defendant may be contacted.

16.     Plaintiff is the regular user of the telephone number that received the above telephonic sales calls.

17.     Plaintiff utilizes this cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line.

18.     Plaintiff's telephone number was registered on the National Do-Not-Call Registry for over 30 days prior to Defendant's first text message solicitation.

19.     Plaintiff was in Florida when Plaintiff received the above text message call, and Defendant's violative conduct occurred in substantial part in Florida.

20.     Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

21.     As demonstrated by the text message screenshots above, Defendant did not provide Plaintiff and the Class members with instructions on how to opt-out of future text messages by, for example, advising them that they could text "Stop" to get the messages to stop, which is a standard requirement outlined in the Principles and Best Practices manual published by CTIA, the trade association that represents every major wireless carrier in the country. *See* 190719-CTIA-Messaging-Principles-and-Best-Practices-FINAL.pdf at 15 ("Message Senders should state in the message how and what words effect an opt-out. Standardized 'STOP' wording should be used for opt-out instructions, however opt-out requests with normal language (i.e., stop, end, unsubscribe, cancel, quit, 'please opt me out') should also be read and acted upon by a Message Sender except where a specific word can result in unintentional opt-out. The validity of a Consumer opt-out

should not be impacted by any de minimis variances in the Consumer opt-out response, such as capitalization, punctuation, or any letter-case sensitivities.").

22.    Defendant's failure to provide opt-out instructions to Plaintiff and the Class members is indicative of Defendant's failure to 1) maintain written policies and procedures regarding its text messaging marketing; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

23.    To transmit the above telephonic sales text message call, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

24.    The number used by Defendant to transmit the subject text message solicitations is known as a "short code." Short codes are short digit sequences, shorter than telephone numbers, that are used to address messages in the Multimedia Messaging System and short message service systems of mobile network operators.

25.    Text messages using a short code can only be sent using a computer, and cannot be sent using a standard telephone.

26.    The impersonal and generic nature of Defendant's text message and the fact that it originated from a short-code demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

27.     To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

28.     Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

29.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

30.     Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

31.     Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

32.     Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

33.     The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

34.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

35.     Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

36.     Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

37.     Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

38.     The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

39.     The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

40.     The Platform also has an auto-reply function that results in the automatic transmission of text messages.

41.     Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection and dialing of telephone numbers.

42.     More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection and dialing of telephone numbers.

43.     Since July 1, 2021, on information and belief, Defendant sent at least 50 text message solicitations to as many consumers in Florida.

44.     Defendant's failure to (1) maintain the required written policies and procedures, (2) provide training to its personnel engaged in telemarketing, (3) maintain a standalone do-not-call list, (4) provide Plaintiff and the Class members with instructions on how to opt out of Defendant's text message solicitations, (5) identify the individual caller, (6) identify the legal name of the entity calling, and (7) identify a telephone number or address at which the caller may be contacted, caused Plaintiff and the Class members harm, including because they had no idea how to stop Defendant's unsolicited text message calls or who to contact to get the messages to stop.

45.     Defendant's telephonic sales calls caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

46.     Plaintiff brings this lawsuit as a class action on behalf of Plaintiff individually and on behalf of all other similarly situated persons as a class action

pursuant to Federal Rule of Civil Procedure 23. The Classes that Plaintiff seeks to represent are defined as:

**DNC Class**: **All persons in the United States who from four years prior to the filing of this action through the date of class certification (1) Defendant, or anyone on Defendant's behalf, (2) placed more than one text message call within any 12-month period; (3) where the person's telephone number that had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding Defendant's property, goods, and/or services; (5) who did not purchase or transact business with Defendant during the eighteen months immediately preceding the date of the first message; and (6) who did not contact Defendant during the three months immediately preceding the date of the first message with an inquiry about a product, good, or service offered by Defendant.**

**IDNC Class**: **All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more text messages within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential telephone number.**

**FTSA Class**: **All persons in Florida who, (1) were sent a telephonic sales call regarding Defendant's property, goods, and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**

**Seller Identification Class**: **All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more text messages within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential**

**telephone number, (4) that did not disclose the name of the individual caller, the name of the person or entity on whose behalf the call is being made, or a telephone number or address at which the person or entity may be contacted.**

47.     Defendant and its employees or agents are excluded from the Class.

**NUMEROSITY**

48.     Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to at least 50 persons. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

49.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

50.     There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Class are:

> (a) Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members;
>
> (b) Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

(c) Whether Defendants maintain an internal do-not-call list and instruct their employees on how to use the list; and

(d) Whether Defendant is liable for damages, and the amount of such damages.

51.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

52.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

53.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the

12

millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

55.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of 47 U.S.C. § 227(c) and 64.1200(c)**
**(On Behalf of Plaintiff and the DNC Class)**

56.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

57.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58.     Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

59.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

60.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

61.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

62.     As a result of Defendant's conduct as alleged herein, Plaintiff and the DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and

knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class.

**COUNT II**
**VIOLATION OF FLA. STAT. § 501.059**
**(On Behalf of Plaintiff and the FTSA Class)**

63.   Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

64.   It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  Fla. Stat. § 501.059(8)(a).

65.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."  Fla. Stat. § 501.059(1)(i).

66.   "Prior express written consent" means an agreement in writing that:

1.   Bears the signature of the called party;

2.   Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message

15

when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

   a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

   b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

67. Defendant failed to secure prior express written consent from Plaintiff and the Class members.

68. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

69. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

70. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a

minimum of $500.00 in damages for each violation.   Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

71.   Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT III**
**Violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the IDNC Class)**

72.   Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

73.   In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests*. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the

request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

74.     Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

75.     Defendant violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide training to its personnel engaged in telemarketing; and (3) maintain a standalone do-not-call list.

76.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the IDNC Class members are entitled to an award of $500.00 in statutory damages, for each text message sent by Defendant. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the IDNC Class.

77.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT IV
## Injunctive Relief Pursuant to 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)
### (On Behalf of Plaintiff and the DNC Class)

78.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

79.     Pursuant to section 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the DNC Class members from Defendant's unsolicited calls and practices.

80.     Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the DNC Class members.

81.     Plaintiff and the DNC Class members will suffer irreparable harm if Defendants are permitted to continue their practice of violating 47 C.F.R. § 64.1200(c).

82.     The injuries that the Plaintiff and the DNC Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

83.     The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

84.     Accordingly, Plaintiff and the DNC Class members seek an injunction requiring Defendant to regularly scrub its database of telephone numbers against the National Do-Not-Call Registry before sending any text message solicitations. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

### COUNT V
### Injunctive Relief Pursuant to 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the IDNC Class)

85.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

86.     Pursuant to section 227(c)(5)(A), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the IDNC Class members from Defendant's unsolicited calls and practices.

87.     Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the IDNC Class members.

88.     Plaintiff and the IDNC Class members suffer irreparable harm if Defendant is permitted to continue its practice of violating 47 C.F.R. § 64.1200(d).

89.     The injuries that the Plaintiff and the IDNC Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

90.     The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

91.     Accordingly, Plaintiff and the IDNC Class members seek an injunction requiring Defendant to (1) implement policies and procedures as required under the TCPA and its implementing regulations; (2) honor consumer opt-out requests; (3) to implement a standalone internal do-not-call list; and (4) train its personnel on use of the list and abide by the list.

92.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT VI
## Injunctive Relief Pursuant to Fla. Stat. § 501.059(10)(a)
### (On Behalf of Plaintiff and the FTSA Class)

93.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

94.     Pursuant to section 501.059(10)(a), Plaintiff seeks injunctive relief prohibiting Defendant's unlawful conduct in the future to protect Plaintiff and the FTSA Class members from Defendant's unsolicited calls and practices.

95.     Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the FTSA Class members.

96.     Plaintiff and the FTSA Class members suffer irreparable harm if Defendant is permitted to continue its practice of violating the FTSA.

97.     The injuries that the Plaintiff and the FTSA Class members will suffer if Defendant is not prohibited from continuing to engage in the unlawful practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

98.     The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the unlawful practices described herein.

99.     Accordingly, Plaintiff and the FTSA Class members seek an injunction requiring Defendant to implement policies and procedures to secure express written consent before engaging in any text message solicitations, and to follow such consent requirements.

100.    Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT VII
### Violations of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)
### (On Behalf of Plaintiff and the Seller Identification Class)

101.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 55 as if fully set forth herein.

102.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> **(4)** ***Identification of sellers and telemarketers.*** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

103.   Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

104.   Defendant violated the requirements of section 64.1200(d)(4) by failing to identify (1) the name of the individual caller; (2) the name of the legal entity on whose behalf the call was being made; and (3) a telephone number or address at which Defendant may be contacted.

105.   Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the IDNC Class members are entitled to an award of $500.00 in statutory damages, for each text message sent by Defendant. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the IDNC Class.

106.   Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA and/or TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA and TCPA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

DATED: October 24, 2022

Respectfully Submitted,

**DAPEER LAW, P.A.**

*/s/ Rachel Dapeer*

Rachel Dapeer
Florida Bar No. 108039
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
T: 305-610-5223
*rachel@dapeer.com*

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713